### J. L. WEES, Respondent, v. THOMAS WARREN, Appellant.

#### St. Louis Court of Appeals, December 21, 1897.

1. **Account**: INSTRUCTION: MEASURE OF DAMAGES. In a suit on account for the reasonable value of certain services rendered, an instruction to the jury that if they found that plaintiff rendered the services for defendant, at his instance and request, and in conformity with defendant's directions, then they should find for plaintiff in such sum as they might believe such services were reasonably worth, was correct as to the measure of damages.

2. **Instruction.** An instruction given on the theory of the defense, that plaintiff was to have no pay, unless he procured a bid, at or near his estimate, for a certain building proposed to be erected, which used the expression "largely in excess" of, instead of reasonably near or an equivalent expression, though objectionable language, was without prejudice to defendant, where plaintiff not only procured a bidder who bid reasonably near the estimated cost of the building, but whose bid, at only a little below what he offered to plaintiff and defendant, was accepted by defendant and another.

*Appeal from the St. Louis City Circuit Court.*—HON. SELDEN P. SPENCER, Judge.

AFFIRMED.

*Sanders & Swarts* for appellant.

The instruction given by the court of its own motion is erroneous. *Blackwell v. Adams*, 28 Mo. App. 61; *Bank v. Payne*, 31 *Id.* 512; *Warson v. McElroy*, 33 *Id.* 554; *Murray v. R. R.*, 101 Mo. 236; *Mohney v. Reed*, 40 Mo. App. 110; *Lewis v. Slack*, 27 *Id.* 119; *Eyerman v. Cemetery Ass'n*, 61 Mo. 490; *Parker v. Marquis*, 64 *Id.* 38; *Jacquin v. Cable Co.*, 57 Mo. App. 320; *Maack v. Schnieder, Id.* 432; *Scott v. Maier*, 56 Mich. 554; *Loe v. R. R.*, 57 Mo. App. 357.

*Carl Otto* for respondent.

BLAND, P. J.—This suit was begun before a justice of the peace on the following account:

"February 29, 1896.

"Thos. Warren, St. Louis, To J. L. Wees, Dr.

| | |
|---|---|
| To services on 1st sketches for flats.............. | $125 00 |
| ¼ inch scale drawings for flats and stores............. | 140 00 |
| Studies, general drawing and specifications for factory bldg., 11th and Monroe St.............. .......... | 225 00 |
| | $490 00" |

Judgment was obtained before the justice by plaintiff. Defendant appealed to the circuit court, where upon a trial *de novo* plaintiff again obtained judgment for the full amount sued for—$490. A motion for new trial was filed, pending which plaintiff filed a remittitur of $125. A judgment was entered for $365, and the motion for new trial overruled. Defendant then perfected his appeal to this court.

Wees was an architect; Warren, the owner of a piece of real estate in the city of St. Louis, on which was an old medical college, desiring to convert this property into a paying investment, called at the office of Wees, expecting to find Beinke, another architect;

Beinke not being in, Warren asked Wees to examine the property and see what could be done with it, and to make estimates. Wees went with Warren and examined the property; Wees suggested the tearing down of the old building and erecting a block of flats and stores, and roughly estimating their cost at $8,000; Warren expressed his willingness to pay $10,000 for the flats and stores. This was in the fall of 1894; Wees proceeded to make one fourth inch scale drawings for the flats and stores; no bids were received for the erection of the flats and stores. In the spring of 1895, Warren found a man who wanted a shoe factory built on the same premises; Wees then at the request of Warren made sketches and eight inch scale drawings and specifications for an ordinary joist construction for the proposed shoe factory, and estimated the cost at $6,600, and the value of the material in the old college building at $4,000. Warren found Beinke and talked over the matter with him, and was advised by Beinke to erect a slow-combustion building. Warren then asked for bids from both Wees and Beinke for a slow-combustion building. After the matter had dragged along for some time, the contract was awarded to Beinke as superintendent. Warren's testimony was in effect that the understanding and contract between him and Wees was, that Wees was not to receive any compensation for his work as architect, unless he procured contracts within or near his estimates. Wees' testimony was to the converse of this. There was also considerable testimony tending to prove that the specifications used by Beinke were copies of the specifications made by Wees, with such changes as were necessary to provide for a slow-combustion building, instead of an ordinary joist one. Wees testified that the prices charged by him for his work were reasonable and such as are usually charged by architects for like work. The

court refused the following instructions asked by appellant:

"The court instructs the jury that the rules of the architects' association can not bind defendant, unless the defendant agreed to be bound by them.

"The court instructs the jury that an architect employed to prepare plans and specifications for a building, the erection of said building to cost a certain sum of money, and the architect to procure and furnish estimates of the probable cost of said erection, then he, the said architect, is not, upon submitting his plans and specifications, entitled to any fee or compensation, unless the building can be erected at a cost reasonably near the cost originally agreed upon."

The court gave of its own motion the following instruction:

"Gentleman of the jury:   If you believe and find from the evidence that the plaintiff in this case did certain work or performed certain services for defendant, and at defendant's instance and request, and in conformity with defendant's wishes and directions in furnishing or preparing certain plans, specifications, sketches or drawings, then you will find a verdict in favor of plaintiff for such sum, as you believe from the evidence, such services or work thus performed were reasonably worth; but if, on the other hand you believe that any work which plaintiff did was done by him under an agreement between himself and defendant, that nothing was to be paid by defendant for such work, unless the building, in regard to which the work was done, should be erected under plaintiff's superintendence and direction, and that said building, through no fault of defendant, was not so erected, plaintiff is not entitled to recover for any work so done, or services so rendered.

"And you are further instructed that if you believe from the evidence that defendant employed plaintiff to draw said plans and specifications, drawings, or any of them, for any buildings, the cost of which buildings was agreed between plaintiff and defendant to be a given sum, and that the cost of the proposed buildings for which said work was done, so far as the cost could be ascertained from reliable bids, or other reliable means, was largely in excess of the sum for which it was so understood the buildings could be erected, then the plaintiff can not recover any compensation for work which he may have done in preparing plans and specifications or drawings for such buildings."

We do not understand from the testimony that the respondent's suit is upon a special contract, but that it is a suit for the reasonable value of professional services rendered at the instance and request of the appellant, and in this view of the case the instruction given is correct as to the measure of damages. The second paragraph of the instruction given by the court is on the theory of the defense that Wees was to have no pay unless he procured a bid at or near his estimate of the cost of the building. The building, as originally planned, was changed so as to materially increase its cost. Charles Dollman (to whom the contract for the erection of the building was awarded) was hunted up by Wees, furnished with the specifications, met Warren at Wees' office and made a bid at $9,100, and says that Warren then and there stated that they would meet the next morning and close the matter up, but Warren did not appear next morning, and he (Dollman) hunted him up, and he was then taken to Beinke, who figured on the building from Wees' estimates, furnished him by

*Account: instruction: measure of damages.*

Dollman, and that the contract was finally closed with Warren and Beinke at $9,000.

The appellant criticises the expression, "largely in excess," as it occurs in the second paragraph of the instruction. We can not approve this INSTRUCTION. expression in this connection; it is too indefinite and gave too much margin for the jury to guess out a contract for Wees and Warren; reasonably near or an equivalent expression would have been a more correct term to have used; the latitude given to the jury was entirely too broad, but the appellant was not prejudiced by this error. Wees not only procured an acceptable and responsible bidder—one who bid reasonably near the estimated cost of the building as changed to a slow-combustion one, but he procured a bidder whose bid at only $100 below what he offered to Wees and Warren, was accepted by Warren & Beinke. The judgment was for the right party, and no prejudicial error appearing, it is affirmed. All concur.